UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

```
USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: 10/19/2021
```

------------------------------------------------------------------X
                                                                  :
A.G., individually and on behalf of R.P., a child with a          :
disability,                                                       :
                                                                  :
                              Plaintiff,                          :         20-cv-7577 (LJL)
                                                                  :
            -v-                                                   :         OPINION AND ORDER
                                                                  :
NEW YORK CITY DEPARTMENT OF EDUCATION,                            :
                                                                  :
                              Defendant.                          :
                                                                  X
------------------------------------------------------------------

LEWIS J. LIMAN, United States District Judge:

Plaintiff A.G., individually and on behalf of R.P., a child with a disability, brings this

action pursuant to the Individuals with Disabilities Education Act ("IDEA"), 20 U.S.C.

§ 1415(i)(3), seeking attorneys' fees and costs, and pursuant to 42 U.S.C § 1983, seeking

equitable relief.  Pending before the Court is Plaintiff's motion for summary judgment, seeking

attorneys' fees and costs for work performed by the Cuddy Law Firm.

For the following reasons, Plaintiff's motion is granted in part and denied in part.

## BACKGROUND

The following facts are undisputed for purposes of summary judgment except as

otherwise stated.

R.P. is a child with a disability under IDEA, 20 U.S.C. § 1401(3)(A), and is classified as

a student with a learning disability.  Dkt. No. 16 ("Statement of Material Facts Not in Dispute"

or "SMF") ¶¶ 2, 6; Dkt. No. 24 ("Counter Statement" or "CS") ¶¶ 2, 6.  A.G. is R.P.'s parent as

defined by IDEA, 20 U.S.C. § 1401(23).  SMF ¶ 3; CS ¶ 3.  R.P. and A.G. reside in Bronx

County, New York.  SMF ¶ 1; CS ¶ 1.

Defendant New York City Department of Education ("Defendant" or "DOE") is a local educational agency as defined by IDEA, 20 U.S.C. § 1401(19).  SMF ¶ 4; CS ¶ 4.

Plaintiff first approached counsel for advice in late 2017 and early 2018.  Dkt. No. 14-3. The matter was assigned to Jason Sterne, Esq., who worked with the parent regarding her concerns about the 2017-2018 school year, including make-up and compensatory education and support necessary for R.P. to receive a free, appropriate public education ("FAPE").  Dkt. No. 14 ("Cuddy Decl.") ¶ 42.

On May 11, 2018, Sterne initiated the administrative hearing component of the matter by filing a due process complaint on behalf of the parent.  SMF ¶ 7; CS ¶ 7.  The complaint asserted that (1) a DOE committee on special education had convened to develop a required individualized education services program ("IESP") for R.P. on June 29, 2016; (2) the IESP had recommended group special education teacher support services six periods per week with no related services; (3) the committee did not reconvene until January 11, 2018 in violation of regulations requiring annual review; (4) the January 11, 2018 committee recommended group special education teacher support services eight periods per week, group occupational therapy twice weekly in forty-minute sessions, and group counseling once weekly for forty minutes; and (5) the DOE had failed to provide the required services.  Dkt. No. 14-1.  The parent complained that the DOE had failed to timely convene a committee or develop an IESP until January 2018 and that as a result R.P. had not received the services to which he was entitled and had been denied a FAPE, that there was no triennial review in June 2017, and that as of May 2018 and that the DOE had not implemented the counseling and occupational therapy required in the January 2018 IESP.  *Id.*  The complaint demanded a finding that Defendant did not provide R.P. with a FAPE during the 2017-2018 school year pursuant to the IDEA and sought an order directing

DOE to immediately implement all services recommended by the January 11, 2018 IESP and to provide makeup occupational therapy and counseling services at an enhanced rate to compensate for Defendant's delay in commencing and implementing services. *Id.*

An impartial hearing officer ("IHO") was appointed on May 23, 2018 and held a hearing on July 17, 2018.  SMF ¶¶ 9; CS ¶¶ 9; Cuddy Decl. ¶¶ 46-48.  The July 2018 hearing was later adjourned so that the parties could explore settlement, but the parties failed to reach a settlement agreement after the Department offered only a fraction of the relief sought.  Cuddy Decl. ¶¶ 48-49.

A further impartial due process hearing was held on March 29, 2019.  SMF ¶ 10; CS ¶ 10.  Plaintiff presented testimony from one witness and submitted 20 pieces of documentary evidence.  Cuddy Decl. ¶ 50.  Defendant presented no witnesses and no documentary evidence, SMF ¶ 12; CS ¶ 12, and conceded to a denial of a FAPE for the 2017-2018 school year due to a combination of an untimely delay in the issuance of the IESP for the 2017-2018 school year and a failure to provide mandated services to R.P. for two full school years, Cuddy Decl. ¶ 50.  Defendant, however, requested that the IHO deny awarding an enhanced rate for any award of compensatory makeup services.  *Id.* ¶ 52.

On June 25, 2019, the IHO issued findings of fact and decision in favor of Plaintiff, finding that Defendant denied R.P. a FAPE during the 2017-2018 school year.  SMF ¶ 12; CS ¶ 12; Cuddy Decl. ¶ 53; Dkt. No. 14-2.  The IHO ordered 50 periods of special education teacher support services, 160 periods of occupational therapy, 36 periods of counseling, and, if necessary, transportation for R.P. so that he may receive the awarded compensatory services.  Cuddy Decl. ¶ 53; Dkt. No. 14-2.  In addition, the IHO mandated that Defendant locate compensatory service providers before April 19, 2019 for all ordered compensatory services.

Cuddy Decl. ¶ 53; Dkt. No. 14-2.  If Defendant failed to do so, the parent was authorized to

locate qualified providers of her choosing at an enhanced rate.  Dkt. No. 14-2.

Thereafter, Plaintiff's counsel engaged in implementation efforts for a period of over

seven months, until about November 4, 2020, to locate providers and subsequently authorize

payment of the awarded makeup services.  Cuddy Decl. ¶ 56.  In September 2020, the parties

stipulated to an open issue regarding the duration of compensatory services to be provided to

R.P.  *Id.* ¶¶ 67-68.  R.P. began receiving compensatory makeup services in November 2020.  *Id.*

¶ 69.

In June 2020, Plaintiff submitted a fee demand to Defendant.  SMF ¶ 13; CS ¶ 13.  The

parties have not reached a resolution on fees in this matter.  SMF ¶ 14; CS ¶ 14.

## PROCEDURAL HISTORY

Plaintiff initiated this action by complaint filed on September 16, 2020.  Dkt. No. 1.  The

complaint asserts two causes of action: (1) equitable relief under 42 U.S.C. § 1983 for

Defendant's deprivation of Plaintiff's rights under the IDEA by failing to implement the findings

of fact and decision;[1] and (2) reasonable attorneys' fees and costs pursuant to 20 U.S.C.

§ 1415(i)(3).

Plaintiff moved for summary judgment for attorneys' fees and costs on April 2, 2021.

Dkt. No. 12.  In the accompanying memorandum in support and declaration, Plaintiff sought

$15,838.52 for the administrative component of the matter and $28,002.50 for the federal

component, for a total of $43,841.02 in fees and costs.  Dkt. No. 13 at 28-29; Cuddy Decl. ¶ 87.

DOE filed a memorandum of law in opposition to the motion for summary judgment on May 24,

2021.  Dkt. No. 25.  Plaintiff filed a reply memorandum of law in further support of the motion

---

[1] Plaintiffs do not mention the claim for equitable relief in the summary judgment papers and
appear to have abandoned the claim.

for summary judgment for attorneys' fees and costs on June 17, 2021.  Dkt. No. 28.  Along with

the reply, Plaintiff submitted an updated billing statement seeking $38,812.50 for the federal

component.  Dkt. No. 30-1.  Thus, together with the amount sought for the administrative

component, Plaintiff requests a total award of $54,651 in fees and costs.

## LEGAL STANDARD

Under Federal Rule of Civil Procedure 56(a), a court "shall grant summary judgment if

the movant shows that there is no genuine dispute as to any material fact and the movant is

entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a); *see also Celotex Corp. v. Catrett*,

477 U.S. 317, 322-23 (1986).  "A genuine issue of material fact exists if 'the evidence is such

that a reasonable jury could return a verdict for the nonmoving party.'"  *Nick's Garage, Inc. v.*

*Progressive Cas. Ins. Co.*, 875 F.3d 107, 113-14 (2d Cir. 2017) (quoting *Anderson v. Liberty*

*Lobby, Inc.*, 477 U.S. 242, 248 (1986)).  "The movant bears the burden of 'demonstrat[ing] the

absence of a genuine issue of material fact.'"  *Id.* at 114 (quoting *Celotex*, 477 U.S. at 323).  In

deciding a motion for summary judgment, the Court must "construe the evidence in the light

most favorable to the non-moving party, and draw all reasonable inferences in its favor."

*Gilman v. Marsh & McLennan Cos., Inc.*, 826 F.3d 69, 73 (2d Cir. 2016).

If the movant meets its burden, "the nonmoving party must come forward with

admissible evidence sufficient to raise a genuine issue of fact for trial in order to avoid summary

judgment."  *Jaramillo v. Weyerhaeuser Co.*, 536 F.3d 140, 145 (2d Cir. 2008).  It may not rely

on "mere speculation or conjecture as to the true nature of the facts," *Hicks v. Baines*, 593 F.3d

159, 166 (2d Cir. 2010), or "on the allegations in [its] pleading, or on conclusory statements, or

on mere assertions that affidavits supporting the motion are not credible," *Gottlieb v. Cnty. of*

*Orange*, 84 F.3d 511, 518 (2d Cir. 1996) (citation omitted).  Rather, to survive a summary

judgment motion, the opposing party must establish a genuine issue of fact by "citing to

particular parts of materials in the record," Fed. R. Civ. P. 56(c)(1)(A), and demonstrating more

than "some metaphysical doubt as to the material facts," *Matsushita Elec. Indus. Co., Ltd. v.*

*Zenith Radio Corp.*, 475 U.S. 574, 586 (1986).  *See also Wright v. Goord*, 554 F.3d 255, 266 (2d

Cir. 2009).  If "the party opposing summary judgment propounds a reasonable conflicting

interpretation of a material disputed fact," summary judgment must be denied.  *Schering Corp. v.*

*Home Ins. Co.*, 712 F.2d 4, 9-10 (2d Cir. 1983).

## DISCUSSION

The IDEA provides that "the court, in its discretion, may award reasonable attorneys'

fees as part of the costs to a prevailing party who is the parent of a child with a disability." [2]  20

U.S.C. § 1415(i)(3)(B)(i)-(i)(I).  The aim of the statute is "to ensure that all children with

disabilities have available to them a free appropriate public education that emphasizes special

education and related services designed to meet their unique needs."  *A.R. ex rel. R.V. v. N.Y.*

*City Dep't of Educ.*, 407 F.3d 65, 72 (2d Cir. 2005) (quoting 20 U.S.C. § 1400(d)(1)(A)).  The

statute mandates the fees awarded "shall be based on rates prevailing in the community in which

the action or proceeding arose for the kind and quality of services furnished" and that "[n]o

bonus or multiplier may be used in calculating the fees awarded."  20 U.S.C. § 1415(i)(3)(C).

The award must be "reasonable" and may not be based on rates exceeding those "prevailing in

the community."  *Id.* § 1415(i)(3)(F)(ii).

The Court applies the interpretation of a "reasonable attorney's fee" that has been

developed in connection with all civil rights fee-shifting statutes.  *A.R. ex rel. R.V.*, 407 F.3d at

75 ("[W]e 'interpret the IDEA fee provisions in consonance with those of other fee-shifting

statutes.'" (quoting *I.B. ex rel. Z.B. v. N.Y.C. Dep't of Educ.*, 336 F.3d 79, 80 (2d Cir. 2003) (per

---

[2] As a threshold matter, Defendant does not dispute that Plaintiff is a prevailing party, entitled to
an award of attorneys' fees.  Dkt. No. 25 at 1, 9.

curiam))); *see also S.N. ex rel. J.N. v. Pittsford Cent. Sch. Dist.*, 448 F.3d 601, 604 (2d Cir.

2006).  The purpose of allowing attorneys' fees in a civil rights action "is to ensure effective

access to the judicial process for persons with civil rights grievances."  *Hensley v. Eckerhart*, 461

U.S. 424, 429 (1983) (internal quotation marks omitted).  "When a plaintiff succeeds in

remedying a civil rights violation, . . . he serves 'as a "private attorney general," vindicating a

policy that Congress considered of the highest priority.'"  *Fox v. Vice*, 563 U.S. 826, 833 (2011)

(quoting *Newman v. Piggie Park Enterps., Inc.*, 390 U.S. 400, 402 (1968) (per curiam)).  "[T]he

fee-shifting feature of the IDEA—including the authority to award reasonable fees for the fee

application itself—plays an important role in 'attract[ing] competent counsel' to a field where

many plaintiffs with meritorious cases could not afford to pay such counsel themselves."  *G.T. v.

N.Y.C. Dep't of Educ.*, 2020 WL 1516403, at *10 (S.D.N.Y. Feb. 12, 2020) (alteration in

original) (quoting *Simmons v. N.Y.C. Transit Auth.*, 575 F.3d 170, 176 (2d Cir. 2009)).

In determining a reasonable fee, "the district court must ascertain whether 'the requested

rates are in line with those prevailing in the community *for similar services by lawyers of

reasonably comparable skill, experience and reputation*.'"  *Chambless v. Masters, Mates &

Pilots Pension Plan*, 885 F.2d 1053, 1058-59 (2d Cir. 1989) (quoting *Blum v. Stenson*, 465 U.S.

886, 896 n.11 (1984)).  "The reasonable hourly rate is the rate a paying client would be willing to

pay . . . bear[ing] in mind that a reasonable, paying client wishes to spend the minimum

necessary to litigate the case effectively."  *Ortiz v. City of New York*, 843 F. App'x 355, 359 (2d

Cir. 2021) (alteration in original) (quoting *Lilly v. City of N.Y.*, 934 F.3d 222, 231 (2d Cir.

2019)).  The Court also considers the *Johnson* factors:

> (1) the time and labor required; (2) the novelty and difficulty of the questions;
> (3) the level of skill required to perform the legal service properly; (4) the
> preclusion of employment by the attorney due to acceptance of the case; (5) the
> attorney's customary hourly rate; (6) whether the fee is fixed or contingent; (7) the

time limitations imposed by the client or the circumstances; (8) the amount involved in the case and the results obtained; (9) the experience, reputation, and ability of the attorneys; (10) the "undesirability" of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases.

*Lilly*, 934 F.3d at 228. "A district court need not recite and make separate findings as to all twelve *Johnson* factors, provided that it takes each into account in setting the attorneys' fee award." *C.D. v. Minisink Valley Cent. Sch. Dist.*, 2018 WL 3769972, at *4 (S.D.N.Y. Aug. 9, 2018) (quoting *E.F. ex rel. N.R. v. N.Y. City Dep't of Educ.*, 2014 WL 1092847, at * 3 (S.D.N.Y. Mar. 17, 2014)); *see also C.B. v. N.Y. City Dep't of Educ.*, 2019 WL 3162177, at *5 (S.D.N.Y. July 2, 2019) (same).

After determining a reasonable hourly rate, the Court multiplies "that rate by the number of hours reasonably expended to determine the presumptively reasonable fee." *Lilly*, 934 F.3d at 230. "To calculate . . . attorneys' fees, courts apply the lodestar method, whereby an attorney fee award is derived by multiplying the number of hours reasonably expended on the litigation by a reasonable hourly rate." *A.R. ex rel. R.V.*, 407 F.3d at 79 (internal quotation marks and alteration omitted) (quoting *G.M. v. New Britain Bd. of Educ.*, 173 F.3d 77, 84 (2d Cir. 1999)). "[T]here is . . . a strong presumption that the lodestar figure represents a reasonable fee." *Id.* (alteration in original) (quoting *G.M.*, 173 F.3d at 84); *accord I.B. ex rel. Z.B.*, 336 F.3d at 80.

The Second Circuit has stated:

In *Arbor Hill* [522 F.3d 182 (2d Cir. 2008)], we attempted to . . . clarify our circuit's fee-setting jurisprudence. We instructed district courts to calculate a presumptively reasonable fee by determining the appropriate billable hours expended and setting a reasonable hourly rate, taking account of all case-specific variables. We explained with respect to the latter:

[T]he district court, in exercising its considerable discretion, [should] bear in mind *all* of the case-specific variables that we and other courts have identified as relevant to the reasonableness of attorney's fees in setting a reasonable hourly rate. The reasonable hourly rate is the rate a paying client would be willing to pay. In determining what rate a paying client would be willing to pay, the district court

should consider, among others, the *Johnson* [488 F.2d 714 (5th Cir. 1974)] factors; it should also bear in mind that a reasonable, paying client wishes to spend the minimum necessary to litigate the case effectively.  The district court should also consider that such an individual might be able to negotiate with his or her attorneys, using their desire to obtain the reputational benefits that might accrue from being associated with the case.  The district court should then use that reasonable hourly rate to calculate what can properly be termed the "presumptively reasonable fee."

In the wake of *Arbor Hill*, we have consistently applied this method of determining a reasonable hourly rate by considering all pertinent factors, including the *Johnson* factors, and then multiplying that rate by the number of hours reasonably expended to determine the presumptively reasonable fee.  It is only after this initial calculation of the presumptively reasonable fee is performed that a district court may, in extraordinary circumstances, adjust the presumptively reasonable fee when it does not adequately take into account a factor that may properly be considered in determining a reasonable fee.

*Lilly*, 934 F.3d at 229-30 (internal quotation marks and citations omitted).

The Court's task is to make "a conscientious and detailed inquiry into the validity of the representations that a certain number of hours were usefully and reasonably expended."  *Lunday v. City of Albany*, 42 F.3d 131, 134 (2d Cir. 1994).  At the same time, however, in reviewing a fee application, "trial courts need not, and indeed should not, become green-eyeshade accountants."  *Fox*, 563 U.S. at 838.  "The essential goal in shifting fees (to either party) is to do rough justice, not to achieve auditing perfection."  *Id.*

"[T]he fee applicant bears the burden of establishing entitlement to an award, and documenting the appropriate hours expended and hourly rates."  *Hensley*, 461 U.S. at 437; *see also C.D.*, 2018 WL 3769972, at *7.  The fee applicant must "establish his hourly rate with satisfactory evidence—in addition to the attorney's own affidavits."  *Chambless*, 885 F.2d at 1059 (internal quotation marks omitted).  Where the fee applicant presents no evidence to support the timekeeper's relevant qualifications, "courts typically award fees at the bottom of the customary fee range."  *C.D.*, 2018 WL 3769972, at *7 (citing cases).

I.      **Reasonable Hourly Rate**

The reasonable hourly rate is the "'prevailing market rate,' i.e., the rate 'prevailing in the

[relevant] community for similar services by lawyers of reasonably comparable skill, experience,

and reputation.'" *Farbotko v. Clinton Cty. of New York*, 433 F.3d 204, 208 (2d Cir. 2005)

(alteration in original) (quoting *Blum v. Stenson*, 465 U.S. 886, 896 & n.11 (1984)).  It is not the

rate that the particular client subjectively "desires" or is willing or able to pay.  *Beastie Boys v.*

*Monster Energy Co.*, 112 F. Supp. 3d 31, 52 (S.D.N.Y. 2015); *see also HomeAway.com v. City*

*of New York*, 2021 WL 791232, at *15 (S.D.N.Y. Mar. 1, 2021) ("[T]he fact that the prevailing

party has negotiated, or paid its lawyers based on, a particular billing rate is not the test of the

rate's reasonableness.").  An "attorney's customary hourly rate" is only one of the *Johnson*

factors.  *Lilly*, 934 F.3d at 228.  At the same time, the reasonable hourly rate "is not ordinarily

ascertained simply by reference to rates awarded in prior cases."  *Farbotko*, 433 F.3d at 208.

Instead, "the equation in the caselaw of a 'reasonable hourly fee' with the 'prevailing market

rate' contemplates a case-specific inquiry into the prevailing market rates for counsel of similar

experience and skill to the fee applicants counsel," *id.* at 209, and it "requires an evaluation of

evidence proffered by the parties," *id.*  "Recycling rates awarded in prior cases without

considering whether they continue to prevail may create disparity between compensation

available under [the fee-shifting statute] and compensation available in the marketplace.  This

undermines [the fee-shifting statute's] purpose of attracting competent counsel to public interest

litigation." *Id.*  While courts may take "judicial notice of past awards given to the same

attorneys as counsel in the current case, particularly for firms active in IDEA-related matters . . .,

reasonable hourly rates awarded in past cases are *not* binding precedents." *C.B*, 2019 WL

3162177, at *5; *see also C.D.*, 2018 WL 3769972, at *6 (S.D.N.Y. Aug. 9, 2018) (declining to

apply rate approved in earlier cases because "[w]hile that approved rate is instructive, some four

or more years passed between 2011 and 2015-2016, when the bulk of work at issue here was undertaken"); *M.D. v. N.Y.C. Dep't of Educ.*, 2018 WL 4386086, at *4 (S.D.N.Y. Sept. 14, 2018) (refusing to adopt the rates awarded in a previous case because "[t]he [previous case] . . . is five years old").  The Court may consider the passage of time, the increase in fees that may come with such passage of time, and the matriculation of attorneys over that passage of time as junior attorneys gain experience and become more senior.  *See C.D.*, 2018 WL 3769972, at *6.  The hourly rate should account both for the income reasonable counsel would forego at the time by handling the matter (hence, sensitivity to historical rates) and also the current rates to account for the delay in payment from when the services were rendered.  In addition, the Court keeps in mind that "a 'reasonable fee' must still be 'sufficient to induce a capable attorney to undertake the representation of a meritorious civil rights case.'"  *C.B.*, 2019 WL 3162177, at *4 (quoting *Perdue v. Kenny A.*, 559 U.S. 542, 552 (2010)).

The parties dispute the reasonable hourly rate that should be used to calculate the attorneys' fee award in this case.  The DOE consistently claims that the reasonable hourly rate for attorneys should be between about $150 and $200 less than what Plaintiff claims, as follows:

| ATTORNEY/PARALEGAL NAME | PLAINTIFF REQUESTED RATE/HR | DOE PROPOSED RATE |
|---|---|---|
| Jason Sterne | $550 | $360 |
| Andrew Cuddy | $550 | $360 |
| Michael Cuddy | $550 | $360 |
| Kevin Mendillo | $450 | $300 |
| Justin Coretti | $425 | $280 |
| Brittan Bouchard | $375 | $200 |
| Shobna Cuddy | $175 | $100 |
| Allison Bunnell | $150 | $125 |
| Sarah Woodard | $150 | $125 |

| Allyson Green | $150 | $100 |
|---|---|---|
| Cailin O'Donnell | $150 | $100 |
| Amanda Pinchak | $150 | $100 |
| John Slaski | $150 | $100 |

The Court will apply $420 an hour as the reasonable rate for Andrew Cuddy and $400 for Sterne.[3]  Andrew Cuddy was admitted to the bar in 1996 and since 2001 has litigated hundreds of special education due process hearings throughout the State of New York.  Cuddy Decl. ¶¶ 71, 74.  He is the head of the Cuddy Law Firm P.L.L.C. and is a published author and regular speaker on special education topics.  *Id.* ¶¶ 75-76.  Sterne is a 1996 law school graduate and has practiced special education law full time since September 2005.  *Id.* ¶¶ 32, 39.  He has written closing briefs for over 150 IDEA impartial due process hearings since September 2005.  *Id.* ¶ 38.  He began working with R.P. in February 2017.  *Id.* ¶ 42.  Counsel is experienced, has a good reputation, and achieved significant success.

The rate for Cuddy is somewhat higher than that approved by Judge Engelmayer for him in *C.D.*, 2018 WL 3769972, at *6, and by Judge McMahon in *C.B.*, 2019 WL 3162177, at *8.  It is consistent with that which the Court has awarded for Cuddy for work of comparable skill.  *See M.H. v. N.Y.C. Dep't of Educ.*, 2021 WL 4804031, at *13 (S.D.N.Y. Oct. 13, 2021) ($420 hourly rate for Andrew Cuddy).  The rate for Sterne is consistent with the rates approved by Judges Engelmayer and McMahon in those cases.  It also is consistent with the $400 rate that the

---

[3] The Court will not calculate a rate for Michael J. Cuddy who devoted 0.30 hours to the matter related to intake, Dkt. No. 14-3, as the Court declines to award these fees.  *See G.B. ex rel. N.B. v. Tuxedo Union Free Sch. Dist.*, 894 F. Supp. 2d 415, 439 (S.D.N.Y. 2012) ("A court has the discretion to reduce the award for time spent by attorneys engaging in less skilled work, like filing and other administrative tasks." (internal quotation marks omitted)).

DOE has agreed to pay New York counsel to defend against requests for attorneys' fee.  Dkt. No. 29-1 at 2.[4]

Judge Engelmayer granted the award in *C.D.* in 2018 for work performed primarily in 2017, *C.D.*, 2018 WL 3769972, at *1, and Judge McMahon granted the award in 2019 for work performed in 2016 and 2017, *C.B.*, 2019 WL 3162177, at *1.  The due process hearing here was held in March 2019, the findings of fact and decision issued in April 2019, and the award here will not be ordered until late 2021.  It is appropriate for the Court to consider that counsel provided the services here at a date later than when the services were rendered in *C.B.* and in *C.D.*  One of the *Johnson* factors is "the preclusion of employment by the attorney due to acceptance of the case."  *Lilly*, 934 F.3d at 228.  As a result of representing R.P., counsel was foreclosed from representing other clients at the same then-prevailing reasonable hourly rate.  It also is appropriate for the Court to consider the delay factor.  The Court has taken those factors into account for Cuddy.

At the same time, however, the skill required of Sterne in this case, the time and labor required, and the novelty and difficulty of the questions was significantly less than in those cases.  *See C.D.*, 2018 WL 3769972, at *1 (11 days of hearings along with an appeal and cross-appeal); *C.B.*, 2019 WL 3162177, at *1-2 (6 days of hearings with witnesses called by both sides and a post-hearing brief).  Plaintiff argues that it should not be penalized for the speedy retreat of Defendant at the administrative phase; it "did not know that Defendant would not be putting on an affirmative case until the **day of hearing**."  Dkt. No. 28 at 8.  Counsel will not be penalized in terms of the hours billed to the matter; Plaintiff was entitled to prepare on the assumption that

---

[4] The agreement with counsel relates solely to federal litigation over attorneys' fees and related matters.  The parties do not address whether the same fee that would be reasonable for federal litigation over fees would also be reasonable for the administrative phase.

Defendant would contest the claims and put on an affirmative case.  However, having reviewed the due process complaint, the Court also concludes that the matter was not one that required extensive skill or was novel and that the speed with which Defendant conceded liability is a mark of the weakness of Defendant's case and the corresponding strength of Plaintiff's case.  It is for those reasons as well, recognizing that counsel would be entitled to a higher rate in a case involving more risk and more skill, that the Court will not calculate fees for Sterne based on the $420 an hour approved in *M.H.*  *See M.H.*, 2021 WL 4804031, at *13 (awarding $420 hourly rate for Sterne in case where cross-examinations of defendant's witnesses required "care and skill").

The award here is higher than the $360 awarded to Andrew Cuddy in *S.J. v. New York City Department of Education*, 2021 WL 100501, at *3-4 (S.D.N.Y. Jan. 12, 2021) (Schofield, J.), *modified*, 2021 WL 536080 (S.D.N.Y. Jan. 25, 2021), but there the court based the rate on what it found to be "the prevailing market rate for experienced, special-education attorneys in the New York area *circa* 2018 is between $350 and $475 per hour," not the current rate.  *Id.* at *3 (quoting *R.G. v. N.Y. City Dep't of Educ.*, 2019 WL 4735050, at *2 (S.D.N.Y. Sept. 26, 2019)).[5]

The Court will apply a rate of $300 an hour for each of Coretti and Mendillo.  Both are mid-level associates.  Dkt. No. 13 at 17.  The rate is consistent with those applied to Coretti and Mendillo in the past and is appropriate given their skills and reputation, the services rendered, and the result achieved, among other factors.  *See C.D.*, 2018 WL 3769972, at *6-7 (awarding $300 hourly rate for a Cuddy Law Firm attorney who had been at the firm since 2012 and had served as lead counsel during the administrative proceedings); *R.G.*, 2019 WL 4735050 at *3 (awarding $300 hourly rate for attorney who began litigating IDEA cases in 2008 and specialized

---

[5] The same can be said for *R.G.* upon which the court in *S.J.* relied.  There, the court based the fee award on the prevailing rate at the time the services were rendered and not at the time of judgment.

in them beginning in 2012); *H.C. v. N.Y.C. Dep't of Educ.*, 2021 WL 2471195, *5 (S.D.N.Y. June 17, 2021) (awarding $300 hourly rate for Mendillo).  The retainer agreement the DOE employs with outside counsel provides for associates to be paid at a rate of $300 an hour.  Dkt. No. 29-1 at 2.  There was not such risk in this case or skill required that counsel should be paid at a higher rate.

The Court will award fees at an hourly rate of $200 an hour for Bouchard who joined the Cuddy Law Firm in 2020.  Cuddy Decl. ¶ 16.  *Cf. S.J.*, 2021 WL 100501, at *4 ("The Report also correctly determined a reasonable rate of $200 per hour for attorney Benjamin Kopp, who graduated from law school in 2015, practiced general litigation for two years and joined the Cuddy Law Firm in 2018."); *M.H.*, 2021 WL 4804031, *14 (awarding $200 hourly rate for attorney Kopp); *A.B. v. N.Y.C. Dep't of Educ.*, 2021 WL 951928, at *5 (S.D.N.Y. Mar. 13, 2021) (finding that an hourly rate of $225 an hour is appropriate for the work of a more junior associate); *G.T.*, 2020 WL 1516403, at *5 (approving rate of $200 an hour for associates who worked only on the civil action and who had fewer than two years of IEDA-related experience when they began doing so); *H.C.*, 2021 WL 2471195, at *6 (assigning rate of $200 an hour to associate who was admitted to practice in 2009 and practiced general litigation from 2009 until 2018, when he joined Cuddy Law Firm).  No information is submitted for Bouchard that would justify a higher rate.

Plaintiff also seeks compensation for the time of paralegals and other non-lawyers spent on the matter.  "Paralegals, depending on skills and experience, have generally garnered between $100 and $125 per hour in IDEA cases in this District."  *A.B.*, 2021 WL 951928, at *7 (quoting *R.G.*, 2019 WL 4735050, at *3).  "Paralegals with evidence of specialized qualifications typically receive $120- or $125-per-hour."  *Id.* at *7.  In addition, paralegals with experience

have received awards of up to $150 per hour.  *See D.B. on behalf of S.B. v. N.Y.C. Dep't of Educ.*, 2019 WL 6831506, at *5 (S.D.N.Y. Apr. 22, 2019) (awarding $150 an hour for experienced paralegal).  The rate for paralegals in the December 2020 retainer agreement the City enjoys with private counsel for DOE cases is $100 an hour.  Dkt. No. 29-1 at 2.

The Court will award fees at a rate of $125 an hour for Slaski, Shobna Cuddy, and Woodard.  Slaski holds bachelor of arts and law degrees and was an intern in the New York State Attorney General Office prior to joining the Cuddy Law Firm.  Cuddy Decl. ¶ 25.  Shobna Cuddy has been the office administrator at the Cuddy Law Firm since 2012 and before that was a paralegal at the firm for five years.  Dkt. No. 14-3 at 24.  Woodard has over 30 years of experience.  *Id.* at 25.  The Court will use an hourly rate of $100 an hour for the other paralegals and non-lawyers.  *See C.D.*, 2018 WL 3769972, at *7; *G.T.*, 2020 WL 1516403, at *5; *H.C.*, 2021 WL 2471195, at *7 (holding that $100 an hour is a reasonable rate for Bunnell, Pinchak, Woodard, Cuddy, Meghezzi, Slaski, and O'Donnell); *A.B.*, 2021 WL 951928, at *7 ("Where plaintiffs have failed to provide evidence showing that a paralegal has special qualifications in the form of formal paralegal training, licenses, degrees, or certifications or longer paralegal experience, courts have typically awarded fees at the lower rate of $100-per-hour for that paralegal.").

## II.   Reasonable Hours

After determining the reasonable rates, the Court must determine a reasonable number of hours to be billed.  "The task of determining a fair fee requires a conscientious and detailed inquiry into the validity of the representations that a certain number of hours were usefully and reasonably expended."  *Lunday*, 42 F.3d at 134.  "If the court finds that the fee applicant's claim is excessive or insufficiently documented, or that time spent was wasteful or redundant, the court may decrease the award, either by eliminating compensation for unreasonable hours or by

making across-the-board percentage cuts in the total hours for which reimbursement is sought." *Wise v. Kelly*, 620 F. Supp. 2d 435, 442 (S.D.N.Y. 2008) (citing *Hensley*, 461 U.S. at 434; then citing *Kirsch v. Fleet St., Ltd.*, 148 F.3d 149, 173 (2d Cir. 1998); then citing *New York State Ass'n for Retarded Child., Inc. v. Carey*, 711 F.2d 1136, 1146 (2d Cir. 1983)); *A.B.*, 2021 WL 951928, at *7 ("A fee award should compensate only those hours that were 'reasonably expended' by the attorneys on this case.  In determining the number of hours reasonably expended for purposes of calculating the lodestar, the district court should exclude excessive, redundant or otherwise unnecessary hours." (citation and internal quotation marks omitted)).  A court can "use estimates in calculating and allocating an attorney's time," since the "essential goal in shifting fees" is "to do rough justice, not to achieve auditing perfection."  *Fox*, 563 U.S. at 838.

The work during the administrative phase of the case was performed primarily by Sterne who incurred 17.4 hours of work time and 5.50 hours of travel time (which is billed at 50%). Dkt. No. 13 at 28.  He was assisted by Pinchak who billed 12.10 hours to the matter and Bunnell who billed 6.60 hours to the matter.  *Id.*  Andrew Cuddy billed only 0.60 hours for reviewing the billing statement and making discretionary reductions.  *Id.*; Dkt. No. 14-3.  Michael Cuddy billed 0.30 hours of non-compensable time at the very beginning of the matter for intake.  Dkt. No. 13 at 28; Dkt. No. 14-3.  Woodard, Shobna Cuddy, and Slaski also billed time for paralegal work. Dkt. No. 13 at 28.

Defendant contends that the hours billed at the administrative level were excessive because they included up to 9 hours for time spent reviewing and re-reviewing educational records, and 4.5 hours for hearing preparation when the hearing was not contested.  It claims that preparation time should be reduced to no more than 3 hours.  The Court has reviewed the hours

and rejects the claim that they are excessive.  The DOE's claim that the hours of review were duplicative is misleading.  The records were received at different times and by different professionals.  *See C.D.*, 2018 WL 3769972, at *9 ("There is of course nothing inherently wrong with staffing multiple attorneys on a case, a practice that is common to, *inter alia*, civil rights litigation.").  The due process complaint was three-single spaced pages and provided a detailed educational history of R.P. and his unique needs.  The Court cannot conclude that the hours for the preparation of the administrative complaint were unnecessary.  *See R.G.*, 2019 WL 4735050, at *4 (rejecting DOE argument because court cannot conclude that tasks were unrelated to the preparation of the complaint).  The hours for preparation also were not excessive.  Although Defendant argues that it did not contest the finding of lack of a FAPE at the hearing, it did not inform Plaintiff's counsel of that position until the day of the hearing.  "Plaintiff appropriately prepared for a full hearing and should not be penalized for Defendant's last-minute decision to only contest relief."  *D.B.*, 2019 WL 6831506, at *5 ("Defendant did not advise Plaintiff's counsel until the very last minute that it would not contest liability.  It could have avoided this by giving more notice of this decision.").  The Court might have reached a different conclusion had Defendant bound itself to the position that Plaintiff was denied a FAPE at some sufficiently early point in time that counsel would not have needed to prepare.

Defendant is correct, however, that the fee request related to Sterne's travel should be reduced in line with the Court's reduction of his reasonable hourly rate.  *See C.D.*, 2018 WL 3769972, at *10 ("Courts generally approve fees, at 50% of an attorney['s] usual rate, for reasonable travel conducted in service of ongoing litigation." (citing *K.F.*, 2011 WL 3586142, at *6)); *see also L.V. v. New York City Dep't of Educ.*, 700 F. Supp. 2d 510, 526 (S.D.N.Y. 2010) ("Courts in this Circuit regularly reduce attorneys' fees by 50 percent for travel time.").

Plaintiff seeks to be compensated for 101.2 hours at the federal court level.  Cuddy Decl. ¶ 87; Dkt. No. 13 at 28-29.  At Plaintiff's suggested rates (prior to reduction by the Court), the attorneys' fees would be $38,812.50.  The bulk of those hours were billed by Bouchard—83 hours.  Only 6.50 hours were billed by paralegals.  Andrew Cuddy billed 9.70 hours at the federal level, primarily for implementation, in supervision of Bouchard, in working on his declaration filed in this Court, and in reviewing the billing statements.  Dkt. No. 30-1.  The time billed by Coretti and Mendillo—two hours in total—is negligible.

The IDEA gives a prevailing parent the right to receive reasonable attorneys' fees and costs incurred in a federal court action related to vindicating rights under the statute.  *See C.D.*, 2018 WL 3769972, at *11; *J.S.*, 2011 WL 3251801, at *8 ("[R]equested fees for the federal action are reasonable.").  Those fees may be incurred in enforcing the rights of the parent or counsel, under the IDEA, to a reasonable attorneys' fee.  As Judge Parker put it, "[t]o hold otherwise [and not to grant counsel reasonable fees for time spent preparing fee applications] would further deter [both] private attorneys [and] resource strapped non-profits in important civil rights matters."  *D.B.*, 2019 WL 6831506, at *6.  Counsel also is entitled to reasonable fees for the time necessary to compile their time entries.  *R.G.*, 2019 WL 4735050, at *4.

Counsel also is entitled to fees and costs incurred in enforcing the decision of an IHO and the findings of fact and decision.  *See H.C.*, 2021 WL 2471195, at *10 (holding that where a complaint is not confined to the issue of attorneys' fees, but also sought equitable relief under 42 U.S.C. § 1983, counsel is entitled to be reasonably compensated for that work).  "To uphold the IDEA's purpose of providing educational services to disabled children, parents must be able to choose litigation if they believe that is necessary to effectively enforce order given by IHOs."  *SJB ex rel. Berkhout v. N.Y.C. Dep't of Educ.*, 2004 WL 1586500, at *4 (S.D.N.Y. July 14,

2004).  "Limiting the actions plaintiff might take to force implementation of an IHO's decision can only reduce the urgency school districts would attribute to the implementation of an IHO's decision and thereby lessen the credibility of the IHO process."  *Id.*  "'[P]ost-decision activities' that are 'largely useful and of a type ordinarily necessary to secure the final result[s] obtained' are compensable."  *C.B.*, 2019 WL 3162177, at *11 (second alteration in original) (quoting *M.D.*, 2018 WL 4386086, at *5).

However, the Court concludes that the hours at the federal level were excessive.  *Id.* at *4 ("If the hours spent on litigation appear excessive in light of the success obtained, the court has discretion to eliminate specific hours or reduce the final award.").  The complaint in this case is five-and-a-half pages long.  Dkt. No. 1.  It contains 22 allegations of fact—primarily the procedural history of the administrative phase of the case—and raises no novel issues.  Counsel spent 6.1 hours drafting the five-and-a-half pages, not counting the time spent reviewing documents in anticipation of drafting the complaint.  Dkt. No. 30-1.

Plaintiff billed approximately 21.6 hours of attorney time to the preparation of the two initial declarations in support of summary judgment and the Rule 56.1 statement.  *Id.*  The Rule 56.1 statement is two pages long.  Dkt. No. 16.  It largely recites facts from the complaint, adding citations to the record.  *Id.*  Bouchard's six-page declaration recites the facts of the federal action, including efforts to settle attorneys' fees.  Dkt. No. 15.  It appears to be based solely on the billing records.  Andrew Cuddy's declaration largely recites material from earlier or other submissions in this case or in other cases, including Cuddy's qualifications, Sterne's qualifications, the history of the administrative phase, and the efforts at settlement.  The documents should have taken no more than a few hours to prepare.

These examples are illustrative and not exhaustive.  In other instances, counsel billed for time that clearly is not compensable (such as saving and filing stamped copies of the complaint) or for tasks that could have been performed by paralegals (such as updating the case spreadsheet).  In still other instances, counsel billed extensive time to the draft of the motion in support of summary judgment, at least portions of which were borrowed from other briefs filed in this Court.  Dkt. No. 30-1.

Rather than go through each time entry separately, the Court exercises its discretion and reduces Bouchard's hours at the federal level by two thirds to 27.6 hours.  The hours billed by the other professionals and paralegals at the federal court level are reasonable.

## III.   **Unreasonable Protraction**

Plaintiff argues that the Court should not reduce its requested fees and expenses because Defendant unreasonably protracted the proceedings.  Dkt. No. 13 at 6.  Plaintiff claims that Defendant made a late stipulation to Plaintiff's prevailing party status and failed to participate in good faith negotiations for fees, costs, and expenses.  *Id.* at 7-10.

The argument is without merit for two separate reasons.  First, the evidence does not establish that Defendant engaged in unreasonable protraction.  Although Defendant might have been able to avoid some of the fees Plaintiff reasonably incurred in obtaining relief at the administrative level and in seeking relief at the federal court level by more quickly responding to Plaintiff's requests, Plaintiff has not submitted evidence that the time Defendant took in responding was unreasonable.  Second, even if Defendant had caused an unreasonable protraction, such delay would not authorize the Court to award fees at more than the reasonable hourly rate or based on time that was not reasonably expended.  *See M.H.*, 2021 WL 4804031, at *25.  Rather, Defendant's delay makes the time Plaintiff spent in seeking statutorily authorized relief necessary and reasonable that, had Defendant acted more responsibly, might not have been

necessary.  As Plaintiff notes, "reasonable diligence in [Defendant's] actions could have avoided the hearing altogether."  Dkt. No. 28 at 7.

## IV.    Costs

A district court may award reasonable costs to the prevailing party in IDEA cases.  *See* 20 U.S.C. § 1415(i)(3)(B); *see also Arlington Cent. Sch. Dist. Bd. of Educ. v. Murphy*, 548 U.S. 291, 297-98 (2006) (holding "costs," as used in 20 U.S.C. § 1415(i)(3)(B), to refer to the list set out in 28 U.S.C. § 1920, the statute governing taxation of costs in federal court); *H.C.*, 2021 WL 2471195, at *11 (S.D.N.Y. June 17, 2021) ("A district court may award reasonable costs to the prevailing party in IDEA cases." (quoting *C.D.*, 2018 WL 3769972, at *12)); *S.J.*, 2021 WL 100501, at *5 (stating the same).

Plaintiff seeks $816.02 in costs at the administrative level.  It seeks only the $400 filing fee at the federal stage.  Cuddy Decl. ¶ 87.  In response, Defendant argues that the costs are "excessive, and include[] lodging, mileage, and parking costs."  Dkt. No. 25 at 19.  However, Defendant does not offer any further argument for why the costs sought are excessive in this case.  Without particularized objections, the Court declines to reduce the costs sought for being excessive.  The Court awards $816.02 in costs at the administrative level and $400 in costs at the federal stage.

## V.    Interest

Plaintiff seeks post-judgment interest.  Dkt. No. 13 at 28.  Plaintiff's request for post-judgment interest is granted.  "Pursuant to 28 U.S.C. § 1961, '[t]he award of post-judgment interest is mandatory on awards in civil cases as of the date judgment is entered.'"  *Tru-Art Sign Co. v. Loc. 137 Sheet Metal Workers Int'l Ass'n*, 852 F.3d 217, 223 (2d Cir. 2017) (alteration in original) (quoting *Lewis v. Whelan*, 99 F.3d 542, 545 (2d Cir. 1996)); *see also S.J*, 2021 WL 100501, at *5 (stating the same).

**CONCLUSION**

For the reasons stated, Plaintiff's motion is GRANTED IN PART AND DENIED IN PART.  For the administrative phase, Plaintiff is awarded $10,694.50 in fees and $816.02 in costs for a total of $11,510.52.  For the federal court level, Plaintiff is awarded $10,924 in fees and $400 in costs for a total of $11,324.  The total award is $22,834.52, plus post-judgment interest at the applicable statutory rate.  The Clerk of Court is respectfully directed to prepare a judgment reflecting the Court's holding and to close Dkt. No. 12 and close the case.

SO ORDERED.

Dated: October 19, 2021
     New York, New York

                                        LEWIS J. LIMAN
                             United States District Judge